UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEVIN ERIC SMITH,

                 Plaintiff,

  -against-                                           1:12-CV-00846 (LEK/RFT)

UNITED STATES OF AMERICA, *et al.*,

                 Defendants.

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

On May 22, 2012, Plaintiff Kevin Eric Smith ("Plaintiff") filed a Complaint *pro se* against over fifty Defendants ranging from the U.S. government to federal agencies, courts, hospitals, states, and individuals (collectively, "Defendants"). See generally Dkt. No. 1 ("Complaint"). Plaintiff asserts, *inter alia*, tort claims, breach of contract claims, and claims under § 1983 arising from alleged constitutional violations. See generally id. On July 23, 2012, the State of New York and the New York Attorney General's Office (collectively, the "New York Defendants") filed a Motion to dismiss. Dkt. No. 5 (the "New York Motion"). Plaintiff filed a Response to the New York Motion on August 21, 2012. Dkt. No. 12 ("Response to New York Motion").

Prior to filing his Response, however, Plaintiff filed a Letter Motion on July 23, 2012 requesting an extension of time to serve the Complaint. Dkt. No. 7 ("Letter Motion"). By Text Order on July 24, 2012, the Honorable Randolph F. Treece, United States Magistrate Judge, denied the request as futile. Dkt. No. 8 ("July Order"). Subsequently, Plaintiff appealed the Order. Dkt. No. 10 ("Appeal"). The New York Defendants, in turn, filed a Response to the Appeal. Dkt. No. 11.

On August 27, 2012, Defendants City of Concord, New Hampshire and Concord, New Hampshire Police Department (collectively, "New Hampshire Defendants") filed their own Motion to dismiss. Dkt. No. 17 ("New Hampshire Motion"). And, on September 21, 2012, Plaintiff filed a Response to the New Hampshire Motion. Dkt. No. 26 ("Response to New Hampshire Motion").

## II. BACKGROUND

Plaintiff's Complaint, put simply, is a massive and ambitious document. In the interests of judicial economy, the Court does not provide an exhaustive description of all factual allegations. For a more complete statement, reference is made to the Complaint. Nevertheless, the Court provides a general overview of the Complaint and the allegations contained therein in an effort to provide much-needed context to the legal analysis that follows. Further, the Court liberally construes Plaintiff's claims in light of his *pro se* status.[1] See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990)

Plaintiff begins his Complaint by acknowledging the vast – and imposing – array of named Defendants, before identifying other potential third parties to this action, ranging from Chili's Grill and Bar to Lehman Brothers Holdings, Inc. Compl. ¶ 1. The factual background section

---

[1] The Court notes that Plaintiff claims, in his Complaint, to possess a J.D. and an LL.M. from an esteemed U.S. law school and to have practiced law in the past. See generally Compl. The Court further notes that this legal background would ordinarily weigh against granting his *pro se* filings the special solicitude afforded to the submissions of lay litigants who may lack the savvy and acumen to comply with every procedural requirement or express themselves with sufficient clarity. See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010). Nevertheless, the Court finds it appropriate to extend special solicitude in liberally construing Plaintiff's claims here because: (1) the Court has not received any concrete evidence of Plaintiff's legal background; (2) the Court is not under the impression that Plaintiff is currently a practicing attorney; and (3) Plaintiff's filings are largely rambling and incoherent and belie Plaintiff's purported legal credentials. That is, the Court concludes that the interests of justice are better served by granting Plaintiff's Complaint a liberal reading, rather than by punishing an individual (perhaps suffering from mental illness) for his past successes.

commences with an historical invocation: "[o]n or around 1613 the presumed daughter of 'James I,' insurgent leader of England, was married to styled 'Frederick V' who claimed to be elector of the Palatinate or something similar perhaps." Id. ¶ 3. Plaintiff goes on to provide a brief history of the last four centuries of western civilization, highlighting various events and culminating in a biographical account of his family and his own birth and upbringing. Id. ¶¶ 3-16.

The next 124 paragraphs and sixty-four pages resemble a memoir of sorts, over the course of which Plaintiff describes, *inter alia*, experiences at a high school basketball tournament, his tumultuous legal career, a failed romance, mental health issues, and more recent troubles with the law. See generally id. According to his Complaint, Plaintiff attended and played lacrosse at the College of the Holy Cross before earning a J.D. and an LL.M. from the Georgetown University Law Center. Id. ¶¶ 17-20. Plaintiff's legal career was marked by assorted personal and professional difficulties, and – after beginning to hear voices while in college – in recent years he has faced assorted legal and mental health-related issues. See generally id.

Throughout his meandering narrative, Plaintiff repeatedly refers to suspicious, unexplained phenomena and ongoing conspiracies that appear to have harmed him in some way. See generally id. He suggests that many inexplicable or undesirable events in his life are the work of "'Government Correlated Persons' or 'GCPs,'" and have been caused by "deployment of Targeted Sound (e.g., UPVs (unidentified/unconventional perceived/projected voices), UPS (unidentified/unconventional perceived/projected sound) against Kevin Eric Smith and without his consent including sometimes UTTs (unlicensed thought transfers)." Id. ¶ 2. He also frequently refers to his German and Irish heritage and appears to believe that some of these conspiracies against him and some of his legal problems may relate to perceived antisemitism or perceptions about his political and philosophical beliefs. See generally id. Further, Plaintiff repeatedly

3

expresses concerns that his belongings are being taken or that unknown individuals are interfering with his work. See generally id. Notably, on numerous occasions in the Complaint, Plaintiff notes that drafts of his sentences have been "hacked" by "GCPs" or other unknown parties, but that Plaintiff has "corrected the possible hack." See, e.g., id. ¶¶ 19, 102, 136-38.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). Such a determination "requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). A court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that he or she is entitled to

4

relief and the action is subject to dismissal.  See Id. at 678-79.

### B. Standard of Review for Appeal of a Magistrate Judge's Decision

Rule 72 of the Federal Rules of Civil Procedure sets out the standard for reviewing a ruling by a magistrate judge.  In reviewing a magistrate judge's ruling on a nondispositive issue, a district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law."  FED. R. CIV. P. 72(a).  When addressing dispositive matters, on the other hand, a district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  FED. R. CIV. P. 72(b) (3).

Under the "clearly erroneous" standard of review, a district court may reverse a magistrate judge's finding only if it the district court is "left with the definite and firm conviction that a mistake has been committed."  Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers, Ltd., 190 F.3d 64, 67-68 (2d Cir.1999) (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985)) (internal quotations omitted); see also United States v. U.S. Gypsum Co., 333 U.S. 364 (1948); United States v. Isiofia, 370 F.3d 226, 232 (2d Cir. 2004).  "[U]nder the contrary to law standard of review, a district court may reverse a finding only if it finds that the magistrate "fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure."  Garcia v. Benjamin Group Enterprise Inc., 800 F.Supp.2d 399, 403 (E.D.N.Y. 2011) (internal citations and quotations omitted).

### C. Opportunity to Amend

As stated in Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given "when justice so requires."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  Further, a district court "should not dismiss [a *pro se* plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be

stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted). Leave to amend may properly be denied where the nonmoving party has demonstrated prejudice or bad faith, or where the requested relief would be futile. Foman, 371 U.S. at 182. Thus, "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted). Amending a pleading is considered a "futile" act when the proposed claim would not withstand a motion to dismiss under Federal Rule 12(b)(6). Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

## IV. DISCUSSION

### A. New Hampshire Defendants' Motion to Dismiss

In the New Hampshire Motion, the New Hampshire Defendants contend that the Court lacks personal jurisdiction over them and that any claims against them must therefore be dismissed. See generally N.H. Mot. The Court must engage in a two-part analysis to determine whether it may properly exercise *in personam* jurisdiction over the New Hampshire Defendants: first, it must determine whether the laws of New York provide for jurisdiction; if they do, the Court must then decide whether an exercise of jurisdiction comports with federal due process requirements. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). In order for an exercise of jurisdiction to comport with the Due Process Clause, it must satisfy both a "minimum contacts" test and a "reasonableness" inquiry. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). With respect to minimum contacts, Plaintiff must demonstrate that Defendants have sufficient contacts with the forum state to justify the Court's exercise of personal jurisdiction over Defendants. See International Shoe, 326 U.S. at 316. "[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of

6

conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

In this case, the Court clearly lacks personal jurisdiction over the New Hampshire Defendants under both prongs of the jurisdictional inquiry. Plaintiff presents no claim that they took part in any activity in New York or would have had any reason to expect that they might be hailed into court in New York. See generally Comp. Instead, Plaintiff's only claims against the New Hampshire Defendants appear to involve his arrest and detainment in New Hampshire.

In his Response to the New Hampshire Motion, Plaintiff provides no compelling arguments as to why the Court has personal jurisdiction over the New Hampshire Defendants. See generally Resp. to N.H. Mot. Instead, he makes vague statements about the borders and jurisdictions of states "overlapping" and the New Hampshire Defendants' potential involvement in the deployment of targeted sound or in the sort of general conspiracies alluded to in the Complaint. See generally id. Plaintiff also cites 28 U.S.C. § 1367, apparently contending that supplementary jurisdiction might solve the present jurisdiction defect. The Court finds these arguments unavailing. Therefore, the New Hampshire Defendants and all claims against them are dismissed from this case. Further, because the defects in the allegations are substantive and could not be remedied by better pleading, these claims and Defendants are dismissed without leave to amend. See Foman, 371 U.S. at 182.

**B. New York Defendants' Motion to Dismiss**

In their Motion to dismiss, the New York Defendants argue that: (1) the Eleventh Amendment to the U.S. Constitution bars suit against Defendant State of New York; (2) the Complaint fails to state a claim against Defendant New York State Attorney General; (3) Defendant New York State Attorney General is entitled to qualified immunity; (4) Plaintiff has no contract

7

claim; (5) Plaintiff's claims are barred by the statute of limitations; and (6) Plaintiff is not entitled to injunctive relief. See generally N.Y. Mot. In order to resolve this matter, the Court need only address the initial question of sovereign immunity.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Similarly, the Amendment bars suit against its own citizens. Hans v. Louisiana, 134 U.S. 1 (1890). The Eleventh Amendment prohibition on suits against states also extends to state agencies in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-101 (1984); Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir. 1993). If a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." Rourke v. N.Y. State Dep't. of Corr. Servs., 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993), cert. denied, 510 U.S. 1073 (1994); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993)); see also Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer.").

Whether state officials sued in their official capacities are entitled to sovereign immunity depends also upon the relief sought in the complaint. See Ex parte Young, 209 U.S. 123 (1908). "[A]cts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court." Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993) (citations omitted).

In certain circumstances, the Eleventh Amendment may preclude suit against a state official

8

acting in her official capacity. See In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted). However, a suit may proceed against a state official in her official capacity when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." Id. at 618 (quotations and citations omitted). In addition to these requirements, an official-capacity suit may proceed only where a government entity's "policy or custom" was the "moving force" behind the alleged violation of federal law. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citing Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 694 (1978)).

In this case, Plaintiff's claims against Defendant State of New York and the New York State Attorney General fall under the ambit of suits precluded by these well-established principles of sovereign immunity and are therefore barred by the Eleventh Amendment. As a result, the New York Defendants and all claims against them are dismissed from this case. Further, because the defects in the allegations are substantive and could not be remedied by better pleading, these claims and Defendants are dismissed without leave to amend. See Foman, 371 U.S. at 182.

**C. Appeal of the Magistrate Judge's Decision**

Rule 4(m) of the Federal Rules of Civil Procedure requires a plaintiff to serve a summons and complaint upon the defendant within 120 days after the filing of the complaint. Pursuant to Local Rule 4.1 and General Order #25, however, for matters in this District, service of process must be completed within *sixty* days after the filing of the complaint. N.Y.N.D. L.R. 4.1(b). Further, "[i]n no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4." Id.

Under the Federal Rules, if a plaintiff fails to serve the defendant in a timely manner, the district court "shall dismiss the action without prejudice . . . or direct that service be effected within

9

a specified time." FED. R. CIV. P. 4(m). However, if a plaintiff shows good cause for the failure to serve the defendant in a timely manner, the district court must extend the time for service. Zapata v. City of N.Y., 502 F.3d 192, 197 (2d Cir. 2007). Factors that courts consider in determining good cause include:

> (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.

De La Rosa v. N.Y.C. 33 Precinct, No. 07 Civ. 7577, 2010 WL 1737108, at *7 (S.D.N.Y. Apr.27, 2010) (internal quotation marks and citation omitted).

Further, under the Federal Rules, in the absence of good cause, courts may enlarge the window as a matter of discretion. Henderson v. United States, 517 U.S. 654, 662 (1996) (citing FED. R. CIV. P. 4). However, courts also have discretion to decline to grant extensions when doing so would be futile. See, e.g., Strickland v. Hongjun, Nos. 10 Civ. 5445, 10 Civ. 6319, 10 Civ. 6344, 2011 WL 2671895, at *1 (S.D.N.Y. July 08, 2011); Harper v. City of N.Y., No. 09-CV-05571, 2010 WL 4788016, at *7 (E.D.N.Y. Nov. 17, 2010).

In this case, Judge Treece appears to have exercised his discretion not to grant an extension on the basis of futility. See July Order. In the July Order, Judge Treece stated that

> 120 days have passed since the filing of the Complaint. After reviewing the Complaint and determining that it does not state a cause of action against any of the defendants named therein as well as being barred by various statute of limitations, the Court does not grant an extension to attempt service as it would be futile.

Id. As a preliminary matter, Plaintiff correctly observes that as of July 23, 2012 when he filed his Letter Motion requesting an extension (or, for that matter, as of July 24, 2012, when the July Order was entered), nowhere near 120 days had passed since he filed his Complaint. App. ¶ 5(b). Indeed, the Complaint was filed on May 22, 2012, just over two months (sixty-two days) before Plaintiff

10

filed his Letter Motion.  See generally Dkt.  Therefore, under the Federal Rule, Plaintiff still had another fifty-eight days in which to serve Defendants.  Because this case was filed in the Northern District of New York, however, Local Rule 4.1(b) rather than Federal Rule 4.1(m) governs the timing of service.  Therefore, the applicable time frame was *sixty* days and not *120*.  Because of this local distinction, Judge Treece was correct in concluding that the period for service had run

While the reference to 120 days in the July Order was certainly an error, the error is not one with substantive effect.  Courts have the ability "to correct a clerical mistake or mistake arising whenever one is found in a judgment, order, or other part of the record."  FED. R. CIV. P. 60(a).  "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."  FED. R. CIV. P. 61; McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984).  In this case, Judge Treece's statement that the 120-day window had passed was clearly erroneous, but it appears that he based his decision to deny the Letter Motion on the grounds of futility because of the deficiency of the pleadings and because of statutes of limitations issues.  July Order.

In short, the sixty-day period prescribed by the Local Rules had expired at the time of the July Order.  While Judge Treece may have – and perhaps should have – granted an extension if Plaintiff had shown cause, Plaintiff – even after a generous reading of his Letter Motion – failed to demonstrate cause for his failure to serve in a timely manner.  Therefore, the error in the July Order is harmless: the period in which Plaintiff was obligated to serve Defendants had expired, and any remaining decision to extend is discretionary.  Given the lack of cause provided, therefore, it was appropriate for the Letter Motion to be denied and no extension to be granted.

The Court finally notes that in his Appeal, Plaintiff requests that Judge Treece be removed from this case because he is biased against Plaintiff.  Without addressing the lack of support for

11

Plaintiff's claims, the Court denies this portion of the Appeal as moot because this matter is dismissed in its entirety.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the New York Defendants' Motion (Dkt. No. 5) to dismiss is **GRANTED**, and all claims against Defendants the State of New York and the New York Attorney General are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the New Hampshire Defendants' Motion (Dkt. No. 17) is **GRANTED**, and all claims against Defendants City of Concord, New Hampshire and Concord Police Department are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's Appeal (Dkt. No. 10) of Judge Treece's Order (Dkt. No. 8) of July 24, 2012 is **DENIED**, and the Order (Dkt. No. 8) is **AFFIRMED**; and it is further

**ORDERED**, that because the time in which Plaintiff must have effected service on Defendants has expired, all remaining claims and Defendants are **DISMISSED** pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; and it further

**ORDERED**, that because no claims or Defendants remain, the Complaint (Dkt. No. 1) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.


DATED:     December 18, 2012
           Albany, New York

Lawrence E. Kahn
U.S. District Judge